# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Charles Bracken, William Deforte, | ) | |
| William Jackson, and Patrick Jennings, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| The County of Allegheny, William P. | ) | Civil Action No. 2:16-cv-171 |
| Mullen as Sheriff of Allegheny County, | ) | |
| the Allegheny County Sherriff's Office, | ) | |
| Chelsa Wagner as Allegheny County | ) | |
| Controller, the Allegheny County | ) | United States Magistrate Judge |
| Controller's Office, Allegheny County | ) | Cynthia Reed Eddy |
| District Attorney John Fitzgerald (In | ) | |
| His Official Capacity and as an | ) | |
| Individual), and Allegheny County | ) | |
| District Attorney Inspector Darrel | ) | |
| Parker (In His Official Capacity and as | ) | |
| an Individual, Jointly and Severally, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

**Cynthia Reed Eddy, United States Magistrate Judge**[1]

### I. Introduction

Four[2] current and/or former Pennsylvania constables initiated this civil rights action under 42 U.S.C. §§ 1983, 1985, and 1986, and Pennsylvania law against seven Allegheny County entities and officials: Allegheny County; the Allegheny County Sheriff's Office; Allegheny County Sheriff

---

[1]   In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to have the undersigned conduct any and all proceedings in this action.  (ECF Nos. 56-60).

[2]  Jackson, originally named as Plaintiff, does not appear in the Caption of the Third Amended Complaint, but he does appear listed as a party in Count III (¶¶ 11, 187, 188), and his counsel includes him in their brief in opposition to the motion to dismiss as to Count III (ECF No.  83 at 10).

William P. Mullen ("Sheriff Mullen"); Allegheny County Assistant District Attorney John Fitzgerald ("ADA Fitzgerald"); Allegheny County District Attorney Inspector Darryl Parker ("Inspector Parker"); the Allegheny County Controller's Office; and Allegheny County Controller Chelsa Wagner ("Controller Wagner").   Plaintiffs filed their Third Amended Complaint ("TAC") on March 1, 2017 (ECF No. 64), followed by a corrected version on March 3, 2017, the operative pleading (ECF No. 66).   There are currently four pending motions to dismiss.   (ECF Nos. 69, 72, 74, and 76).   The parties have submitted briefs and documents in connection with these pending motions, (ECF Nos. 70, 73, 75, 77, 81, 82, 83, 84, 85 and 86), all of which have been reviewed by the Court.

By way of further background, we note the following procedural history.   On February 7, 2017 we granted four motions to dismiss, dismissing Plaintiffs' Amended Complaint, and found it unclear "how many and what types of claims Plaintiffs are attempting to assert under the Fourth and Fourteen Amendments." (ECF No. 61 at 5.) We noted, for example, "the disjointed way in which Plaintiffs organized Count I of their amended complaint," which conflated a number of legal theories.   (ECF No. 61 at 6.) Plaintiffs failed to articulate whether they were asserting violations of procedural or substantive due process. (ECF No. 61 at 6).   The Court permitted Plaintiffs to amend, instructing:

> Because this is a civil rights case, the Court is required to extend Plaintiffs an opportunity to amend their deficient pleading, irrespective of whether they have requested to do so and irrespective of whether they are counseled, unless it would be futile or inequitable.   Although it is unlikely that many of the deficiencies in the amended complaint can be cured, the Court finds that under the circumstances Plaintiffs should be afforded the chance to amend their pleading.   When filing the second amended complaint, Plaintiffs must adhere to the following directives that another member of this Court recently gave to pro se plaintiffs:
>
> > Plaintiffs must indicate in separate Counts each constitutional right violated or state tort committed, indicating the specific Defendant(s) against whom that claim is asserted, and referencing in separately numbered paragraphs under each

count, any factual statements showing that Plaintiffs are entitled to relief. Plaintiff must also include in each Count the specific relief sought against the Defendant(s) named in that Count.

Moreover, the Court will not consider any arguments made by Plaintiffs in briefs in opposition about legal theories or allegations that have not been pled in accordance with the directives in the preceding sentence. In responding to the second amended complaint, Defendants may reassert any applicable arguments that they have raised in connection with the pending motions.

(ECF No. 61 at 13) (citations omitted).

On February 21, 2017 Plaintiffs filed the Second Amended Complaint (ECF No. 21). On February 22, 2017, we *sua sponte* struck Plaintiffs' Second Amended Complaint, in part because "Plaintiffs once again confusingly set forth multiple legal theories in a single count." (ECF No. 63 at 2.) Although we granted Plaintiffs leave to file a Third Amended Complaint consistent with our directives, we warned that Plaintiffs "will not be given another chance to file an amended pleading." (ECF No. 63 at 3.)

Upon review of the Third Amended Complaint and these filings, the Court agrees with Defendants that the TAC lacks facial plausibility and will dismiss it with prejudice for failure to state a claim

## II.  Legal Standard

"Under Rule 12(b)(6), a motion to dismiss will be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 88 (3d Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Twombly*, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.  Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'shown' -- 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  A pleading may not be amended by a brief in opposition to a motion to dismiss.  *Zimmerman*, 836 F.2d 173, 181 (3d Cir. 1988).

Plaintiffs have attached two documents to the TAC, and Defendants have attached numerous documents to their briefs in support of their motions to dismiss.  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). Further, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth of Pa. ex rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (internal marks and citation omitted); *see also Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

### III.  Factual Background

The TAC consists of 247 paragraphs and spans over thirty-eight pages.  In it Plaintiffs allege as follows.  At all relevant times, Plaintiffs Charles Bracken ("Constable Bracken"), William DeForte ("Constable DeForte"), William Jackson ("Constable Jackson"), and Patrick Jennings ("Constable Jennings") are current or former elected constables in Pennsylvania.  TAC at ¶¶ 9-12. Broadly speaking, the Plaintiffs allege that in Allegheny County there has been a long history of employees of the Sheriff's Office harboring animosity toward the constables.  Said animosity was based, in part, on members of the Sheriff's Office wanting the exclusive rights to collect fees associated with serving Allegheny County Family Division bench warrants.  Motivated to achieve these exclusive rights at the expense of the constables in Allegheny County, various officials of the Sheriff's Office influenced ADA Fitzgerald and Inspector Parker to arbitrarily single out a select group of politically unpopular constables, including the Plaintiffs.

Plaintiffs' complaint covers a period of time beginning in 1993. Plaintiffs describe a series of alleged meetings involving payment of constable fees for serving bench warrants issued by the judges of the Allegheny County Court of Common Pleas Family Division ("Family Division"). TAC ¶ at 16-28. Plaintiffs specifically reference a meeting in 1994 attended by then Common Pleas Judge [David] Cercone, Bernard Regan, Manager of Constable Services, Mike Souk,

President of the Allegheny County Constable's Association (Constable's Association), and two constables, Kenneth Knedro and (Plaintiff herein) Deputy Constable William DeForte. TAC at ¶ 22. At the meeting, Plaintiffs allege it was agreed that service of bench warrants would include "fingerprinting, overseeing transport to and from courts and warrant costs for every extra warrant the person being served had at the time of service by constables." TAC at ¶ 23. This procedure allegedly continued until 2006 when another meeting occurred to discuss and implement a procedure for executing Allegheny County Family Division warrants. TAC ¶ 36. The 2006 meeting was attended by employees of the Allegheny County Common Pleas Court Family Division, the Manager of Constable Services and representatives of the Controller's office, and various constables, including Plaintiffs DeForte and Jackson. TAC ¶36. These participants allegedly agreed that there would be no change from prior practice with respect to the bench warrant fees for services provided by the constables. TAC at ¶39.

It was also allegedly agreed that the constables would be able to charge the same fee for persons who turned themselves in at a constable's direction. TAC at ¶ 40. Plaintiffs        have attached to their Third Amended Complaint a December 14, 2006 memorandum ("the 2006 Memorandum") from Patrick Quinn, the Director of Family Division Services, which discusses certain warrant policies and also procedures for warrants cleared by "turn in." TAC at ¶¶ 38-40 and Exhibit A attached thereto (ECF No. 66-1). Regarding the fees themselves, it merely states that a constable "can receive reimbursement for clearing [a turn-in] warrant from the Manager of Constable Services." The memorandum does not mention the amount of the fee that is to be paid for a turn-in. (ECF No. 66-1).

Until 2014, constables charged the court – and were paid – the same fees regardless of whether they performed all the tasks associated with executing a bench warrant or merely arranged

a turn-in. TAC at  ¶¶ 33, 38, 39. These fees added up to at least $86.50 per turn-in. TAC at ¶ 92.

In their briefs submitted herein Defendants explain that Constables' fees are governed by the

Pennsylvania Constable Act, 44 Pa. C.S.A. §7101 *et seq*., specifically Section 7161. 44 Pa. C.S.A.

§ 7161. The Plaintiffs aver that despite this statute, it is common practice for counties, including

Allegheny County, to negotiate the fees paid to constables and fees can also vary between various

magisterial district courts in Allegheny County. TAC at ¶¶ 41-42.

The TAC then describes the procedure by which turn in warrants were processed and paid.

TAC at ¶ 49-60. To receive payment, constables had to fill out and submit vouchers reflecting the

services they had provided.  TAC at ¶¶ 48-54. After a supervisor in the Sheriff's Office signed off

on the vouchers, they were sent to the Controller's Office, which cut checks for the constables.

TAC at ¶¶ 55-57. Vouchers with discrepancies or mistakes were returned to the constables to be

fixed.  TAC ¶¶ 58, 59.  Until 2014, no constable was ever prosecuted for submitting a flawed

voucher. TAC ¶¶ 60, 61.

Plaintiffs also identify and rely upon the Constable Handbook that was created by the

Allegheny County Court Administrator in 2012, but they do not append it to the TAC. Defendants

have attached relevant parts of the Constable Handbook to their briefs (ECF Nos. 69-1, 73-1, 75-

1). That Handbook is alleged to have continued the procedure identified in Mr. Quinn's 2006

Memorandum.  TAC at ¶ 63-64.

Employees of the Sheriff's Office despised constables and were abusive to them because

the Sheriff's Office wanted to serve Family Division warrants and receive the fees for doing so.

TAC at ¶¶ 66-74. In the middle of 2013, Defendant Darryl Parker, an investigator in the District

Attorney's Office, and Defendant Assistant District Attorney John Fitzgerald began "selectively"

investigating constable fee vouchers.  TAC at ¶ 75. The Sheriff's Office encouraged Inspector

Parker and ADA Fitzgerald to charge certain constables with crimes, even though no probable cause existed, and Inspector Parker and ADA Fitzgerald knew the charges were "baseless." TAC at ¶¶ 76, 77. Parker and Fitzgerald disregarded the 2006 memo about turn-ins and began to threaten constables with arrest if they did not repay the turn-in fees. TAC at ¶¶ 84-87. Parker and Fitzgerald "took it upon themselves to invalidate and negate existing contracts." TAC at ¶¶ 91-94,101. Parker and Fitzgerald were acting as "sycophants of the Sheriff's Office" to remove the constables from serving Family Division warrants. TAC at ¶106. Defendant Sheriff Mullen and Defendant Wagner provided unspecified "false information" to Inspector Parker and ADA Fitzgerald. TAC at ¶ 130. Inspector Parker and ADA Fitzgerald then "forced" certain constables to pay money back to the Defendant Allegheny County Controller's Office "or face criminal charges." TAC at ¶ 98.

Defendant Allegheny County Controller's Office, which "maintains and controls all of the county's financial matters[,] … publicly stated that the constables did not commit any crime." TAC at ¶ 81. It is further alleged that Defendant Controller Chelsa Wagner and her office took the "official stance" that any mistakes on constable fee vouchers were "honest" ones. TAC at ¶ 78. Controller Wagner did not tell the public that the policy followed by her office for years had been "retroactively reversed and misapplied…." TAC at ¶ 192. "Wagner and her agents collected the retro-active fees from the Plaintiffs according to Fitzgerald and Parker's selective calculations." TAC at ¶ 172.) Plaintiffs Bracken, Jennings and DeForte "surrendered their legally earned wages against their will" because of Defendants Inspector Parker, ADA Fitzgerald and Controller Wagner's "malicious threat of illegal prosecution." TAC at ¶ 175. Even though Controller Wagner "knew of the unlawfulness of the retroactive application of the unilateral change in the payment schedule," she "did nothing to correct the injustice" and assisted the other defendants "by creating an [sic] Controller's Office procedure for collecting the illegally seized funds." TAC at ¶ 180.

Plaintiff DeForte was the only constable formally charged and prosecuted. TAC at ¶¶ 159, 199. Defendants Inspector Parker and ADA Fitzgerald "leaked the false charges to the news, in order to humiliate DeForte," causing him to suffer severe emotional distress and physical illness. TAC at ¶¶ 234, 236. DeForte's municipal police officer certification pursuant to the Municipal Police Officers Education and Training Program ("MPOETP") was "seized" as a result of his "arrest" by Inspector Parker and ADA Fitzgerald, as is required when an officer faces felony charges. TAC at ¶ 144.) Because of the seizure of his certification, DeForte could no longer work as a township police officer. TAC at ¶ 145. It is alleged that the criminal proceedings "were terminated in favor of DeForte" when the charges were dismissed.  TAC at ¶¶ 226, 227. However, we note that there are no facts in the TAC supporting the inference that Controller Wagner or Sheriff Mullen had any interactions with, let alone control over, ADA Fitzgerald and Inspector Parker, who are both employed by the Allegheny County District Attorney's Office, a separate entity.

## IV.  Discussion

### A.   The TAC Fails to Remedy Past-Noted Insufficiencies

Despite having multiple opportunities to amend their cause of action, the TAC remains deficient in large part for the same reason enunciated and explained earlier:  it does not give the defendants fair notice of what claims are and the grounds upon which they rest.  *Twombly*, 550 U.S. at 555.  We emphasize that Plaintiffs are represented by counsel. Although the TAC has corrected the prior stark errors found in the Second Amended Complaint (identifying which parties are being sued under which count as well as correcting the prior lazy drafting tactic of wholly incorporating by reference all of the factual allegations from the amended complaint), it still fails to comply with our clear instructions to clearly separate distinct legal theories.  We have warned

Plaintiffs that they will not be given another chance to file an amended pleading, and that the TAC "must be a stand-alone pleading without reference to any previous pleading or document in this case, and must conform to the Federal Rules of Civil Procedure, and be consistent with the Court's directives in this Order and the Memorandum Order from February 7, 2017." (ECF No. 63).

The allegations in the TAC are grouped under eight separate Counts, the first four being federal claims pleading multiple legal theories within each Count. The titles given to each Count reveal the TAC's flaws. They are entitled as follows. Count I: DeForte vs. all Defendants, entitled "Due Process, 14th Amendment, 4th Amendment Prosecution Without Probable Cause, §§ 1983, 1985, and 1986," TAC at ¶¶ 112-170; Count II: Plaintiffs Bracken, Jennings and DeForte v. all Defendants, entitled "Conspiracy to Violate XIV Amendment Due Process and IV Amendment §§ 1983, 1985 and 1986," TAC at ¶¶ 171-181; Count III: All Plaintiffs v. all Defendants, entitled "Conspiracy to Violate XIV Amendment Due Process and IV Amendment §§ 1983, 1985 and 1986," TAC at ¶¶ 182-192; Count IV: Plaintiffs Bracken, Jennings and DeForte v. all Defendants, entitled "Conspiracy to Violate XIV Amendment Due Process and IV Amendment Property Interest in their Reputation §§ 1983, 1985 and 1986," TAC at ¶¶ 193-211. The remaining Counts allege four pendant claims under Pennsylvania law. [3]

As we explained in our previous Order granting the motion to dismiss the Amended Complaint, as to the discernible federal claims, which in large part remain frustratingly the same, these claims lack facial plausibility. Plaintiffs are represented by counsel, who has been given several opportunities to amend their pleadings so as to comply with the requisite rules and our

---

[3] In Counts V through VII DeForte sues all Defendant under Pennsylvania law (Count V, malicious prosecution; Count VI, abuse of process; Count VII, and intentional infliction of emotional distress). These are claims related to the criminal charges that were filed against him. At Count VIII Plaintiffs Bracken, Jennings and DeForte sue all Defendants for breach of contract under Pennsylvania law.

orders.   The TAC does not change in any measurable way compliance with the plausibility requirement.  The legal theories relied upon therein are intertwined and difficult to distinguish and differentiate.   We could dismiss the TAC in its entirety on that basis alone, and for failure to comply with our clear directives, Plaintiffs having been put on notice of what is required.  *See Taylor v. Pilewski,* 2008 WL 4861446, *3 (W.D. Pa. Nov. 7, 2008) ("[the c]ourt need not provide endless opportunities" for amendment, especially where such opportunity already has been enjoyed); *Houser v. Postmaster Gen. of U.S*., 573 Fed. App'x. 141 (3d Cir. 2014) (affirming the Court's dismissal of a plaintiff's second amended complaint with prejudice, where the Court found that "[i]t [] would be inequitable to require Defendant, who already once has exhaustively and successfully defended Plaintiff's grievances, to respond to a continuous stream of formal and informal attempted amendments").

Nevertheless, out of an abundance of caution, we will endeavor – as defendants' counsel has been forced to do -- to address each claim and explain why, as an alternative, the TAC must be dismissed on the merits, and that any proposed amendment, even if we were inclined to grant Plaintiffs' counsel yet another bite at the apple, would be futile.

## B.  Outside Records

As we noted earlier, the parties have included various documents for our consideration which are attached to the TAC, or fall outside the pleadings but are appropriate insofar as they  are matters of public record and undisputedly authentic documents  upon which Plaintiffs' claims are based.

Attached to ADA Fitzgerald and Inspector Parkers brief are the following: the Constables Handbook ("Handbook"); the charges against DeForte and the supporting affidavit of probable cause (a public record of Magisterial District Court 05-0-03 ("City Court"); the parts of the City

Court record demonstrating that DeForte was summoned, not arrested; and a copy of the City Court record confirming that the charges were withdrawn due to DeForte's paying restitution; public records of the Pennsylvania State Police concerning DeForte's MPOETP certification (which Defendants argue demonstrate that DeForte was continuously certified as a police officer during the time he alleges that he lost his certification, and is currently employed by both North Buffalo Township and Morris Township); excerpts from DeForte's Amended Complaint at DeForte v. Worthington Township, 16-cv-67 (which Defendants  argue show that the Pennsylvania State Police charged DeForte with separate unrelated crimes for which he would have lost his MPOETP certification before the DA Defendants charged him ; excerpts from DeForte's Complaint in this Court at DeForte v Blocker, 16-cv- 113 (which Defendants argue demonstrate that DeForte was continuously employed as a police officer for North Buffalo Township from 2013 until the present).  We further have a copy of documents relating to the December 31, 2008 termination of employment for Robert Gallis, previously employed with the Sheriff's Office, after which the Controller's Office assumed the duties of the Manager of Constable Services Position, which contradict the allegation that process for reviewing fee vouchers remained unchanged during the time of the District Attorney's Office investigation.  (ECF Nos. 69-1 through 5).

Plaintiffs allege they had a contract based upon the 2006 Memorandum from Patrick W. Quinn, the Administrator of the Family Division Adult Section, addressed to the Constables.  TAC, Ex. A.  and the Constables Handbook which has been provided by Defendants (ECF No. 69-1) (relied upon by Plaintiffs in TAC at ¶¶ 62-64) ("This handbook mirrored the Memorandum issued by Patrick Quinn in 2006, in regards to accepted to [sic] voluntary turn-in fees charged on constable fee vouchers. . . [I]t never rescinded or contradicted the terms of the agreement ... )).  Neither the 2006 Memorandum nor the Handbook state that Plaintiffs will receive fees for services

such as conveying Turn-Ins to and overseeing fingerprinting or transporting Turn-Ins to and from

court. The Memorandum says only: "constables can receive reimbursement for clearing the

warrant". TAC Ex. A, p. 3 of 3 The Handbook allows payment in accordance with the Constable

Payment Form. (ECF No. 75-1, p. 15, Section 4, Part IV, ¶¶ 5, 6).  The Constable Payment Form

does not list a fee for Turn-Ins. Only line 11, "Execute Warrant(s) – $25.00" clearly applies to

Turn-Ins. Line 13, "Mileage", may apply to Turn-Ins if the Plaintiffs drove to execute the warrants.

[ECF No. 75-3 at 11] ( DA Exhibit 1, Appendix J") There is no allotment of $86.50 for Turn-Ins.

*Id.*

Second, the TAC includes an Exhibit B:



Exhibit B shows that DeForte's MPOETP Certification was effective from May 23, 2013 through

June 30, 2015, which he alleges was taken away from him as a result of his charges.  He alleges

that he "was a policeman for North Buffalo Township and because of the seizure of his MPOETC

certification, he could no longer work as a policeman." TAC at ¶ 145.  The Pennsylvania State

Police certified record has been attached to Defendants' brief, and shows that DeForte was, in fact,

certified a North Buffalo Township Police Officer from April 9, 2012 until the present [ECF No.

75-7 at 1-2].  In addition, consistent with that certified record, in a Complaint filed in this Court at

*DeForte v. Blocker*, 16-cv-113, filed on January 12, 2016, in which DeForte was represented by

the same counsel herein, DeForte alleged that he was a employed by North Buffalo Township in 2013 and was still employed when the Complaint was filed. (C.A. 16-113, ECF No. 1 at ¶¶ 159, 160, 180-186). This uncontroverted public record shows that DeForte did not lose his job with North Buffalo township or his MPOETP certification, and therefore he cannot plausibly articulate loss of that particular purported constitutional right. Substantive due process does not protect his suspension pending resolution of his criminal charges, as we will address later.

DeForte does not address this public record in his reply brief. Instead, he argues that his "life was disrupted by DA Defendant's false and malicious charges. DeForte could no longer earn a living by way of his life's training and education as a police officer. As in Black v. Montgomery Cty., the Courts talk of how "[Her] life was presumably disrupted by travel." The "disruption" caused by DA Defendant's unconscionable actions literally stripping DeForte of his ability to earn a living until the time the felonious charges were dismissed, would most certainly create a seizure, depriving DeForte of his liberty for the purposes of a Fourth Amendment malicious prosecution claim. [ECF No. 82 at 7].

Third, we note that the uncontroverted public record clarifies that DeForte was summoned, rather than arrested. [ECF No. 75-5 at 1].   DA Exhibit 4 discloses that the reason for the withdrawal of the criminal charges was "Restitution Paid." [ECF No. 75-6].

With these record clarifications at hand, we now proceed to an assessment of whether Plaintiffs have plead factual content that allows the court to draw the reasonable inference that they have stated a claim as to each of the defendants.

At Count I  DeForte sues all Defendants arising out of his inability to work as a result of the criminal complaint against him, which he alleges lacked probable cause, further alleging, *inter alia,* that  Inspector Parker and ADA  Fitzgerald filed the charges intentionally, deliberately and

with malice in order to single him out and "hang him out to dry" in order to destroy his political and law enforcement career. (TAC ¶ 168).

Section 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983; *See Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). Thus, in order to state a claim for relief under Section 1983, the plaintiff must allege facts from which it could be inferred that "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." *Id.* Therefore, to state a claim for relief under § 1983, a plaintiff must demonstrate both that the defendants were acting under color of state law and that a constitutional violation was directly caused by their conduct. *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255–56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996) (*citing Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.1995)).

### C. **Municipal liability**

A government entity may not be held liable under section 1983 under the respondeat superior doctrine. To obtain a judgment against a municipality, a plaintiff must prove that the municipality itself supported the violation of rights alleged. *Monell*, 436 U.S. at 692–95, 98 S.Ct. at 2036–38. Thus, section 1983 liability attaches to a municipality only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts

15

may fairly be said to represent official policy, inflicts the injury." *Id.* at 694, 98 S.Ct. at 2037. To establish municipal liability pursuant to § 1983, the plaintiff must identify the policy, custom or practice of the municipal defendant that results in the constitutional violation. *Monell,* 436 U.S. at 690–91. A municipal policy is deemed to have been made "when a 'decision-maker possess [ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir.1990) (quoting *Pembaur*, 475 U.S. at 481). On the other hand, a custom or practice can be found with no official declaration, and can be demonstrated in one of two ways:

> First, custom "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bieievicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir.1990); *accord Beck*, 89 F.3d at 971. Secondly, "[c]ustom ... may also be established by evidence of knowledge and acquiescence" by the final policymakers in the area. *Beck*, 89 F.3d at 971 (*citing Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir.1989)). However, a plaintiff need not identify knowledge and acquiescence of a practice so "permanent and well settled" as to have "the force of law," *Monell*, 436 U.S. at 691, 98 S.Ct. 2018, since such customs are "ascribable to municipal decisionmakers." *Bielevicz*, 915 F.2d at 850 (internal quotations omitted) (quoting *Anela v. City of Wildwood*, 790 F.2d 1063, 1067 (3d Cir. 1986)); *see also id.* at 853 ("Such well-established custom exists only with the approval or, at the very least, with the sufferance of policymakers"). A plaintiff cannot prove a custom simply by citing one instance of the custom asserted. *Groman v. Twp. of Manalapan,* 47 F.3d 628, 637 (3d Cir.1995); *Fletcher*, 867 F.2d at 793. However, a showing that a well-established practice exists, and that the municipality has done nothing to end or change the practice, supports a finding of a custom attributable to the municipality. *See Bielevicz*, 915 F.2d at 852–53 (finding no basis for a directed verdict in favor of a municipality upon such a showing at trial).

*Izquierdo v. Sills*, 68 F.Supp.2d 392, 406 (D. Del. 1999); s*ee also Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (To establish municipal liability based upon a custom or practice, the plaintiff must demonstrate that the decision-maker had notice that a constitutional violation could occur and that the decision-maker acted with deliberate indifference to this risk.).

Finally, "[i]n addition to identifying a policy or custom, a plaintiff bears the burden of proving that the municipal practice in question was the proximate cause of the violation of his constitutional rights." *Hodinka v. Delaware Cnty.*, 759 F.Supp.2d 603, 615–16 (E.D. Pa. 2011) (citing *Bielevicz*, 915 F.2d at 850). To do so, the plaintiff must show either an "affirmative link" or "plausible nexus" between the custom or practice and the alleged constitutional deprivation. *Bielevicz*, 915 F.2d at 850–51. So long as this link is not too tenuous, whether the municipality was the proximate cause of the constitutional violation and thus the injury to the plaintiff, is a matter left to the jury. *Id*. at 851 (*citing City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)). *See also Bd. of the Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 404 ("The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.").

The facts pled in the TAC regarding Defendant Allegheny County's alleged liability are identical to those in the Second Amended Complaint (which we struck). The Motion to Dismiss filed by Allegheny county is granted, for the same reasons stated in our prior Opinion (ECF No. 61 at 8). Even so, for the reasons discussed herein, plaintiffs have not adequately plead – nor could they if leave to amend were granted yet again – a violation of a federal constitutional or statutory right.

In particular we note that the TAC states it was "the official stance of Allegheny County Controller, Chelsa Wagner and her office, that any constable fee voucher disparities were an honest mistake, and that they did not see any criminal intent on the part of the constables." TAC ¶ 78. There are no factual allegations that the County – a legal entity separate from both the District

17

Attorney's Office and the Controller's office – had a custom or policy to demand reimbursement or to criminally charge constables for fees that were paid them.  *Bryan County*, 520 U.S. at 404, *Reitz v. County of Bucks*, 125 F.3d 139, 146 (3d Cir. 1997). It cannot be held liable for the acts of any individual members of the District Attorney's Office or Controller's Office under *Monell*. The Plaintiffs aver that ADA Fitzgerald and Detective Parker charged Plaintiff Deforte with a criminal offense and allegedly threatened the other Plaintiffs with a criminal offense if they did not reimburse Allegheny County for fees they received and  that Fitzgerald and Parker claimed were illegally billed to the County. The TAC does not allege facts that support a plausible claim that Fitzgerald or Parker were acting pursuant to any Allegheny County policy, custom or practice nor that that they were policy making officers of Allegheny County.  Therefore, the TAC is dismissed as to Defendant Allegheny County.

### D. Procedural/ substantive due process of the 14th Amendment

Regardless of whether we interpret the TAC as asserting a procedural or substantive due process clause, we must first discern whether Plaintiffs have adequately alleged that they were deprived of a property or liberty interest; the deprivation of a property or liberty interest is a precondition to either a procedural or substantive due process claim. *See, e.g., Logan v. Zimmerman Brush Company,* 455 U.S. 422, 429, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1981) (procedural due process context); *DeBlasio v. Zoning Board of Adjustment for the Township of West Amwell,* 53 F.3d 592, 598–601 (3d Cir. 1995).  As with the earlier version of the Complaint, the TAC fails to include any facts showing that Plaintiffs had a property or liberty interest under the procedural due process clause in continuing to serve family division bench warrants. *See In re Act 147 of 1990,* 598 A.2d 985, 986 (Pa. 1991) (under Pennsylvania law, constables are elected officials and are treated as independent contractors; they are not employees of the Commonwealth,

18

the judiciary, the township, or the county in which they work); *Swinehart v. McAndrews*, 221 F.Supp.2d 552, 556-59 (E.D. Pa. 2002), *aff'd* 69 Fed. App'x 60 (3d Cir. 2003) (constable that received 95% of his assignments from a particular judicial district did not have a property interest in "any statute, regulation, government policy, or mutually explicit understanding of continued employment" and did not have a liberty interest in receiving specific job assignments from that particular judicial district).

Additionally, Plaintiffs have failed to plead a property or liberty interest under the substantive due process clause. *See Gikas v. Washington School Dist*., 328 F.3d 731, 732-33 (3d Cir. 2003) (not all property interests worthy of procedural due process protection are protected by the concept of substantive due process; rather, a property interest must be "fundamental" under the Constitution to be subject to substantive due process protection); *Nicholas v. Pa. State Univ*., 227 F.3d 133, 138 (3d Cir. 2000) (university professor's property interest in his tenured professorship was not a protected property interest under the substantive due process clause); *Wrench Transp. Sys., Inc. v. Bradley*, 340 Fed. App'x 812, 816 (3d Cir. 2009), *quoting Medeiros v. Vincent,* 431 F.3d 25, 32 (1st Cir. 2005) ("The right to 'make a living' is not a 'fundamental right' … for substantive due process purposes."): *Mun. Revenue Serv., Inc. v. McBlain*, 347 Fed. App'x 817, 826-27 (3d Cir. 2009) ("Nor can [plaintiff] establish a fundamental property or liberty interest worthy of substantive due process protection. The ability to compete for municipal contracts is not a fundamental property interest and 'defamatory statements that curtail a plaintiff's business opportunities [do not] suffice to support a substantive due process claim.") (internal citations omitted).

As noted earlier, with respect to the description of Deforte's suspension, substantive due process does not extend, e.g., to a public employee's interest in continued employment or a

temporary suspension in that employment. *See Nicholas,* 227 F.3d at 140 (citing to the "great majority of courts of appeals" holding that employment rights are not "fundamental" rights within the scope of substantive due process protection); *Hill v. Borough of Kutztown*, 455 F.3d 225, 235 (3d Cir. 2006); *see also Cotner v. Yoxheimer*, 2008 WL 2680872, *8 (M.D. Pa. July 2, 2008) (noting that in *Hill* the Third Circuit held that public employment is not a right entitled to substantive due process protection). Nor do Plaintiffs allege facts to plausibly support a claim that Defendants' conduct "shocks the conscience." *Schultz v. Hughesville Borough*, Civ. A. No. 4:10–cv–0262, 2011 WL 3273876, at *16 (M.D. Pa. July 29, 2011) ("To establish a substantive due process violation, the plaintiff must show the government official's conduct 'shocks the conscience.'") (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1988)) (other citations omitted). Here, plaintiffs claim that the Defendants threatened to bring criminal charges against them if they did not return the fees that they received without performing services, but this hardly rises to the level of conscience shocking behavior.

In addition, we note that plaintiffs do not allege that they have lost any purported interest in serving other types of warrants or to maintain and fulfill their duties in any other regard, calling into question whether any alleged property interest has even been lost. Their status as elected officials further calls into question whether they have claims in this regard.

Nor would DeForte's MPOETP Certification constitute a fundamental interest to support his claim for violations of substantive due process. To date, the Third Circuit has limited non-legislative substantive due process review to cases involving real property ownership. *Golden Eagle Tavern, Inc. v. City of Lancaster*, 2014 WL 881139, * 3 (E.D. Pa. March 6, 2014), *citing DeBlasio*, 53 F.3d at 600 ("[land] ownership is a property interest worthy of substantive due process protection").

Plaintiffs' alleged contract – which is based on the 2006 Memo by the Family Division administrator and 2012 Handbook – is not a contract.  It does not state the Plaintiffs will receive fees for services such as conveying turn-ins and the like.  The memo only states "constables can receive reimbursement for *clearing the warrant*" (emphasis added) and the Handbook allows payment in accordance with the Constable Payment Form.  There is no allotment in either of these documents for $86.50 for turn-ins, which Plaintiffs claim the purported contract allows for.

"Generally, the two types of contracts that create protected property interests are those that confer a protected status – those characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits – and those where the contract itself includes a provision that the state entity can terminate the contract only for cause."  *Baraka v. McGreevey*, 481 F.3d 187, 207 (3d Cir. 2007) (quoting *Linan-Faye Const. Co., Inc. v. Hous. Auth. of Camden*, 49 F.3d 915, 932 (3d Cir. 1995) (internal marks omitted).

The TAC does not establish a contract for the fees, let alone a contract that demonstrates extreme dependence, permanence, or for cause termination. "Under Pennsylvania decisional law, government officials cannot bind the government without the necessary statutory approval." *Chainey v. Street*, 523 F.3d 200, 211 (3d Cir. 2008) (collecting Pennsylvania cases and finding that a mayor's promise of a contract that violated a City's Home Rule Charter was unenforceable.") Nor has there been facts alleged to support a cognizable claim of apparent authority to bind the County.  *Chainey*, 523 F.3d at 212 (no apparent authority for a mayor to bind a city to a contract where a statute and a city home rule charter dictated the approval necessary to bind the city). Equitable estoppel is likewise unavailable.  *Chainey*, 523 F.3d at 213 n. 5, *citing City of Scranton v. Heffler, Radetich & Saitta*, LLP, 871 A.2d 875, 882 (Pa. Cmwlth. Ct. 2005) (refusing to apply

21

the principles of equitable estoppel because those who contract with a municipal corporation do so at their own peril and must inquire into the powers of the municipal corporation and its agents to enter into any contracts; the City's Administrative Code provides specific provisions relating to the execution of contracts with the City, which were undisputedly followed in the case).

The Allegheny County Home Rule Charter Art. V. § 1-502(i) requires the Allegheny County Executive to negotiate, award and sign all County contracts, or to cause all County contracts to be negotiated and signed (with certain exceptions not relevant here).   Allegheny County Code of Ordinances § 5-405(E) requires the Allegheny County Solicitor to prepare and approve the form of all County contracts.     There are no allegations that the Allegheny County Chief Executive negotiated, awarded or signed the 2006 Memo or 2012 Handbook, or that the Allegheny County Solicitor prepared them or approved their forms.   Therefore, the 2006 Memo and 2012 Handbook do not support the procedural due process claims.

Moreover, public officials are entitled to only the compensation established by law, and those paid by fees cannot be paid for services not listed on the fee bill.   *Commonwealth ex rel. Truxtun v. Cty Comm'rs*, 3 Serg. & Rawle 601 (Pa. 1818); *Lehigh Cty. v. Semmel*, 124 Pa. 358, 366-67 (1889).  The Plaintiffs by law are compensated by fees as set forth in the Constables Act, 44 Pa.C.S. §§ 7161-7166, which the Plaintiffs have alleged is violated "often."   (TAC ¶ 44). "While the Court of Common Pleas has general supervisory power over the constables, it is not a participant in the process by which the county pays the constables."  *York-Adamns Cty. Constables Ass'n by Sponseller v. Court of Common Pleas of York Cty.*, 474 A.2d 79, 82 (Pa. Cmwlth Ct. 1984) (footnote omitted).  Thus, the constables were not entitled to be paid a fee memorialized in the 2006 Memo created outside the statutory framework.  Plaintiffs have no protectable interest in the assignments to serve warrants from the Family Division.

### E.  Due Process

Even if plaintiffs have alleged a property or liberty interest, their claim for due process must be dismissed.  Plaintiffs allege that they were told they would be charged criminally for collecting unearned fees for turn-ins, and were given a choice to repay the unearned fees or criminal trial.  The facts as allege contradict any theory that they were not provided notice and an opportunity to be heard as to those disputes.  So, too, with respect to DeForte's allegations that his loss of MPOETP certification and its associated benefits.  Under the applicable law governing municipal police officers' education and training, which defendants are not alleged to have failed to enforce (even if that was within their control) DeForte was entitled to notice and opportunity to be heard prior to revocation or suspension.   37 Pa. Code § 203.14(a) ("The Commission maintains the right to revoke certification after notice and an opportunity to be heard under Subchapter G (relating to notice and hearings) for . . . conviction for a disqualifying criminal offense"); and 53 Pa. C.S. § 2164 (3.1)(i) (powers and duties of commission include ability to suspend or revoke certification upon action by a hearing examiner, and includes ability  of officer to reapply); and 37 Pa. Code § 201.101-103.  There are no allegations that DeForte was not put on notice and did not have an opportunity to challenge how his certification was handled.

### F.  Malicious Prosecution

 At Count I, DeForte asserts a claim for "prosecution without probable cause" which we construe as a claim for malicious prosecution. To establish a malicious prosecution claim under 42 U.S.C. § 1983 each Plaintiff must show that: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept

of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). Plaintiff DeForte has failed to state a § 1983 malicious prosecution claim, specifically, facts to support the second element enunciated in *Johnson*. i.e. that the criminal proceedings ended in his favor.  The criminal docket sheet, which is a public record, states the charges were withdrawn and it does not indicate his innocence. (ECF No. 75-5).  *See Hector v. Watt*, 235 F.3d 154, 156 (3d Cir. 2000) ("[A] plaintiff claiming malicious prosecution must be innocent of the crime charged in the underlying prosecution."); *Donahue v. Gavin*, 280 F.3d 371, 383 (2002) (when a prosecutor abandons criminal charges against the accused, it will be considered a favorable termination "only when their final disposition is such as to indicate the innocence of the accused"); *DiFronzo v. Chiovero*, 406 Fed. App'x 605, 609 (3d Cir. 2011) (concluding that the criminal charges filed against the plaintiff were not terminated in his favor because the order granting the motion seeking nolle prosequi did not indicate the plaintiff's innocence, as it said nothing as to why the motion was filed or granted).   Additionally, to the extent that the charges were withdrawn because Constable DeForte paid restitution as Defendants contend, he cannot establish that the prosecution terminated in his favor.  *See Mitchell v. Guzick*, 138 Fed. App'x 496, 500 (3d Cir. 2005) (prosecution did not terminate in favor of the plaintiff who paid restitution to avoid being criminally convicted).

In addition there are no allegations that DeForte suffered a deprivation of liberty consistent with the concept of seizure as a consequence of the criminal charges – the fifth element of a malicious prosecution claim.  There are no allegations in the TAC that after the criminal charges were initiated, Constable DeForte suffered any deprivation of liberty at all.  Notably, he does not allege that he was ever arrested, and, tellingly, he does not dispute the authenticity of the exhibits submitted by Defendants that indicate that he was only issued summons.   In the context of a §

24

1983 malicious prosecution claim, "[t]he type of constitutional injury the Fourth Amendment is intended to redress is the deprivation of liberty accompanying prosecution, not the prosecution itself." *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005) (emphasis added). Thus, "the limits of Fourth Amendment protection relate to the boundary between arrest and pretrial detention." *Id. (*quoting *Torres v. McLaughlin, 163 F.3d 169*, 174 (3d Cir. 1998)). *DiBella* held that "there could be no seizure significant enough to constitute a Fourth Amendment violation in support of a Section 1983 malicious prosecution action" when the plaintiffs "were only issued a summons; they were never arrested; they never posted bail; they were free to travel; and they did not have to report to Pretrial Services." *Id.* Having failed to allege any facts indicating that his liberty was deprived in any way after he was arrested, Constable DeForte cannot satisfy the fifth element of a malicious prosecution claim. Given the undisputed public criminal record, any amendment of the federal malicious prosecution claim would be futile, and therefore, that claim is dismissed with prejudice.

We further find that Plaintiffs have not stated a claim for malicious prosecution against the Controller Defendants, who did not initiate the prosecution (rather, the District Attorney's Office is alleged to have done so.) The allegation that "[b]oth Sheriff William Mullen and Chelsa Wagner intentionally and maliciously provided false information to Parker and Fitzgerald" (TAC ¶ 130) is a bald assertion as to those defendants, lacking in facial plausibility and specific factual averments, and thus must be dismissed with prejudice.

G. **Reputation**

In addition, Plaintiffs allege they have a constitutionally protected liberty interest in their reputation under the Fourth Amendment (at Count IV), i.e. they suffered public humiliation, loss of friends and jobs, and an ability to earn a living. Any arguments advanced by Plaintiffs in their

briefs in opposition in connection with the same have been disregarded by the Court. Nevertheless, we note that "reputation alone is not an interest protected by the Due Process Clause." *Versarge v. Township of Clinton, New Jersey*, 984 F.2d 1359, 1371 (3d Cir.1993) To make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest. *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Edwards v. California Univ. of Pennsylvania*, 156 F.3d 488, 492 (3d Cir.1998). This is referred to this as the "stigma-plus" test. *See, e.g., Graham v. City of Philadelphia*, 402 F.3d 139, t 142 n. 2 (3d Cir. 2005); *Ersek v. Township of Springfield*, 102 F.3d 79, 83 n. 5 (3d Cir. 1997).

In the public employment context, the "stigma-plus" test has been applied to mean that when an employer "creates and disseminates a false and defamatory impression about the employee in connection with his termination," it deprives the employee of a protected liberty interest. *Codd v. Velger*, 429 U.S. 624, 628, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977). The creation and dissemination of a false and defamatory impression is the "stigma," and the termination is the "plus." When such a deprivation occurs, the employee is entitled to a name-clearing hearing. To satisfy the "stigma" prong of the test, it must be alleged that the purportedly stigmatizing statement(s)(1) were made publicly, *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Chabal v. Reagan*, 841 F.2d 1216, 1223–1224 (3d Cir.1988); *Anderson v. City of Philadelphia*, 845 F.2d 1216, 1222 (3d Cir.1988), and (2) were false. *Codd*, 429 U.S. at 627–629, 97 S.Ct. 882; *Fraternal Order of Police v. Tucker*, 868 F.2d 74, 82–83 (3d Cir.1989).

Plaintiffs allege that Controller Wagner publically stated that certain unidentified constables had made an "honest mistake" as to the voucher disparities, and that the Controller and her office did not see any criminal intent on the part of the constables. TAC ¶ 78. At the same

26

time, Plaintiffs allege some constables simply made clerical errors, TAC ¶ 97, 98, and there is no allegation that Plaintiffs were identified specifically. DeForte opted not to pursue the name clearing hearing to which he (and the other plaintiffs) would have been entitled as a form of relief, when he paid restitution and had the charges withdrawn. *See Ersek v. Township of Springfield*, 102 F.3d 79, 84 (3d Cir. 1996) and *Graham v. City of Philadellphia*, 402 F.3d 139, 147 (3d Cir. 2005). Accordingly, under the facts as alleged there is no plausible claim that Plaintiffs suffered a constitutionally protected liberty interest in their reputation under the Fourth Amendment (at Count IV) is dismissed.

### H.  Selective Enforcement

Moreover, in their briefs Plaintiffs appear to claim they were subjected to selective enforcement. Such claims must be pursued under the equal protection clause, which the TAC does not reference; rather Plaintiffs appear to seek recovery under the due process cause of the 14th Amendment. We previously admonished and advised that "the Court will not consider any arguments made by Plaintiffs in briefs in opposition about legal theories or allegations that have not been pled in accordance with the directives in the preceding sentence." (ECF No. 61 at 13), citing *Zimmerman*, 836 F.2d at 181 and *Frederico*, 507 F.3d at 201-02. To state a selective enforcement claim, a plaintiff must plead that (1) he was treated differently compared with similarly situated individuals; and (2) "the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Kirkland v. Morgievich*, No. 04-1651, 2008 WL 5272028, at *8 (D.N.J. Dec. 16, 2008) *(quoting Zahra v. Southhold*, 48 F.3d 674, 683 (2d Cir. 1995)). We note that Plaintiffs do not allege that membership in any protected class which the law protects from discrimination. The facts as

alleged are mere bald assertions without sufficient plausibility to support the requisite intent to injury.

In addition, ADA Fitzgerald is entitled to absolute prosecutorial immunity, and any alleged motives in initiating criminal proceedings are irrelevant for purposes of absolute immunity. *Brosky v. Miller*, 2015 WL 853689, *6 (W.D. Pa. 2015). Accordingly, the claims brought against Fitzgerald are subject to dismissal.

### I.    Fourth Amendment Seizure

Plaintiffs obliquely allege that their Fourth Amendment rights were violated. "The Fourth Amendment, which protects persons from 'unreasonable searches and seizures' prohibits false arrest, false imprisonment, illegal search and seizure, and the use of excessive force.'" *Roman v. City of Newark*, No. 16–1110, 2017 WL 436251, at *3 (D. N.J. Jan. 31, 2017) (quoting U.S. Const. amend. IV). Reasonableness under the Fourth Amendment "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 618 (1988) (quoting *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985). A seizure occurs when a reasonable person "would have believed he was not to free to leave." *United States v. Mendenhall*, 446 U.S. 544, 544 (1980). However, even if the circumstances suggest that a reasonable person would not feel free to leave, the seizure is only illegal if it is unreasonable. *Elkins v. United States*, 364 U.S. 206, 222 (1960). A seizure of property occurs when there is some meaningful interference with a possessory interest in that property. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Based upon our analysis herein, the Plaintiffs have cannot allege possessory interest in the fees, and based upon the allegations of the TAC, they returned the fees voluntarily, voluntarily attended the meetings where the fees were discussed, and there are no allegations that they were not free to leave any proceeding

or other meeting wherein their fees were called into question.  Therefore, the Fourth Amendment claims fail.


### J.   Respondeat Superior

To the extent that Sherriff Mullen and other supervisory individuals are alleged to have violated Plaintiff's constitutional rights, "[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode v.Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). To adequately plead with appropriate particularity, a civil rights complaint must state the conduct, time, place, and persons responsible. *Evancho*, supra at 353 (citing *Boykins v. Ambridge Area Sch. Dist*., 621 F.2d 75, 80 (3d Cir.1980); *Hall v. Pa. State Police*, 570F.2d 86, 89 (3d Cir.1978). Such allegations are lacking and must be dismissed.  Moreover, we note that it is not  plausibly alleged – nor could it be – that Mullen and the Sheriff's Office supervise the County or the Controller;  parenthetically there are no facts pled to establish a claim that Mullen or the ASCO had any role in administering the fee vouchers during the relevant time period.

### K.  Conspiracy

Counts II, III and IV allege conspiracy.    As a general matter, "a plaintiff's obligation to provide the 'grounds' of his  'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of  the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in the original; citations omitted).  To successfully plead a civil conspiracy claim, a plaintiff must set forth allegations that are:

> supported by facts bearing out the existence of the conspiracy and indicating its
> broad objectives and the role each defendant allegedly played in carrying out

> those objectives. Bare conclusory allegations of "conspiracy" or "concerted action" will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred.

*Angino v. Wells Fargo Bank, N.A*., No. 1:15-CV-418, 2016 WL 787652, at *12 (M.D. Pa. Feb. 19, 2016) *report and recommendation adopted*, No. 1:15-CV-418, 2016 WL 759161 (M.D. Pa. Feb. 26, 2016) (quoting *Flanagan v. Shively*, 783 F. Supp. 922, 928 (M.D. Pa. 1992)).  The TAC is devoid of factual content that indicates, e.g., the alleged objectives of the "conspiracy" and/or the roles that the individual defendants may have played.

Because Plaintiffs have failed to state a claim under the due process clause of the Fourteenth Amendment, the Court must also dismiss their § 1983 claim against Defendants for conspiracy to violate due process. *See Sweetman v. Borough of Norristown, Pa*., 554 Fed. App'x 86, 90 (3d Cir. 2014) ("A § 1983 conspiracy claim is viable only if there has been an actual deprivation of a constitutional right."); *Monrea'l v. Lamb*, 2016 WL 278313, *8 (E.D. Pa. 2016) ("When no constitutional violated has been pleaded, no conspiracy claim can be maintained under § 1983.").

The Court will also dismiss Plaintiffs' § 1985(3) conspiracy claim because Plaintiffs allege no factual allegations in support of their conclusory allegations that a conspiracy occurred, and they fail to allege that as constables, they belong to a protected class. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) ("The language [in § 1985(3)] requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."); *Farber v. City of Paterson*, 440 F.3d 131, 135, 137 (3d Cir. 2006) (rejecting political affiliation as a protected class and noting that in the Third Circuit, only "African-Americans, women, and the mentally retarded" have been recognized as § 1985(3) classes).

Plaintiffs' § 1986 claim will also be dismissed. In addition to being untimely under the applicable oneyear statute of limitations, a §1986 claim cannot be maintained without an underlying violation of §1985. *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696-97 (3d Cir. 1980).

## V.  Leave to Amend

Because we have determined that amendment would be futile, we will decline to permit Plaintiffs to amend their pleading.  *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile.").

## VI.  Conclusion

Having determined that all of the federal claims in the TAC should be dismissed, the Court declines to exercise supplemental jurisdiction over the state law claims at this time. 28 U.S.C. § 1367(c)(3).  When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.*" City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (*quoting Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)). The court can find no justification for exercising jurisdiction over the Plaintiffs' state law claims.

Accordingly, the four motions to dismiss (ECF Nos. 69, 72, 74, and 76) will be  granted in part and denied in part, specifically, the will be granted as to  the federal claims and denied as to the state law claims.

An appropriate order follows.


DATED:  November 21, 2017


<u>s/ Cynthia Reed Eddy</u>
Cynthia Reed Eddy
United States Magistrate Judge


cc: all registered counsel via CM-ECF